**IN THE UNITED STATES DISTRICT COURT**
**FOR THE SOUTHERN DISTRICT OF ALABAMA**
**SOUTHERN DIVISION**

| | | |
|---|---|---|
| SAMUEL D. KING, | ) | |
| | ) | |
| **Plaintiff,** | ) | |
| | ) | |
| v. | ) | **CIVIL ACTION 12-0360-WS-B** |
| | ) | |
| ST AEROSPACE MOBILE, INC., | ) | |
| | ) | |
| **Defendant.** | ) | |

**ORDER**

This matter comes before the Court on defendant's Motion for Summary Judgment (doc. 29). The Motion has been extensively briefed and is now ripe for disposition.[1]

I.      **Nature of the Case.**

This is an action alleging employment discrimination on the basis of race and age, as well as retaliation for statutorily protected activities. In his Complaint, plaintiff, Samuel E. King (a

---

[1]      By Order (doc. 40) dated April 29, 2013, the Court granted defendant's request to file a reply brief (inclusive of Appendix) of no more than 25 pages. The Reply / Appendix (doc. 45) that defendant ultimately filed nominally complied with that page limitation, but only because defendant shrunk the line spacing from double-spacing (as used in defendant's principal brief) to 1.5-spacing. (The Reply also includes 20 footnotes, utilizing a font size far smaller than the 12-point text prescribed by Local Rule 5.1.) Tinkering with formatting to satisfy a page limitation contravenes both the spirit of the April 29 Order and the letter of Local Rule 5.1(a). This is particularly true where defendant effectively circumvented the (already expanded) page limitation anyway by filing a 9-page (also 1.5-spaced) Motion to Strike that reads for all the world like a supplemental brief on the merits (rather than a motion to strike), as it is replete with merits-based arguments explaining why defendant believes certain exhibits do not advance plaintiff's cause. Of course, motions to strike are not properly used as *de facto* "overflow" briefs for arguments that defendant could not cram into its 25-page 1.5-spaced reply.

        Nor have the parties advanced their respective causes by larding the record with nearly 1,000 pages of exhibits, the vast majority of whose contents are not referenced in their briefs. This Court will not scour uncited portions of those exhibits in hopes of unearthing potentially helpful factual nuggets that the parties have not addressed. *See* Rule 56(c)(3), Fed.R.Civ.P. ("[t]he court need consider only the cited materials" on summary judgment); *Williamson v. Clarke County Dep't of Human Resources*, 834 F. Supp.2d 1310, 1314 n.2 (S.D. Ala. 2011) ("The Court will not scour uncited portions of the summary judgment record for evidence that might bolster either side's arguments.").

54-year old African-American male), alleges that he was employed by defendant, ST Aerospace Mobile, Inc. ("STA Mobile"), as a mechanic from September 2006 through November 2008, when he was terminated for allegedly falsifying training documentation.  King's scattershot Complaint alleges that STA Mobile subjected him to race-based disparate treatment with regard to work assignments, discipline, promotions, overtime and discharge; that STA Mobile allowed a racially hostile work environment to flourish during King's employment; and that STA Mobile retaliated against King for bringing an internal complaint of race discrimination.  Based on these allegations, plaintiff brings claims for race discrimination, racially hostile work environment, and retaliation, all under Title VII of the Civil Rights Act of 1964, as amended, 42 U.S.C. §§ 2000e *et seq.* ("Title VII"), as well as claims of race discrimination and retaliation under 42 U.S.C. § 1981.  King also asserts a separate claim that STA Mobile discriminated against him in compensation, retention and other terms and conditions of employment because of his age, in violation of the Age Discrimination in Employment Act, 29 U.S.C. §§ 621 *et seq.* ("ADEA").

Defendant has now moved for entry of summary judgment on all claims and causes of action asserted by plaintiff.[2]

---

[2]       To accompany their extensive summary judgment briefs, both plaintiff and defendant have filed Motions to Strike portions of each other's evidentiary submissions.  (Docs. 38, 44.)  Each side has also filed a response to the other's Motion to Strike.  (Docs. 43, 46.)  Issues raised in the Motions to Strike will only be addressed herein insofar as they impact the summary judgment analysis.  *See King v. Alabama Dep't of Public Health*, 2010 WL 3522381, *1 n.1 (S.D. Ala. Sept. 2, 2010) ("Rather than becoming mired in ancillary evidentiary objections at the outset, the Court will consider those Motions to Strike on an ongoing basis herein, and only to the extent necessary to resolve the pending Motion for Summary Judgment.").  To the extent that those Motions involve evidentiary skirmishes over portions of exhibits on which the Court does not rely or that otherwise do not sway the summary judgment analysis, they are **moot**.  Likewise, to the extent that defendant's Motion to Strike expresses counsel's disagreement with inferences that opposing counsel seeks to draw from certain exhibits or the legal effect of such exhibits, it is **denied** because the filing is not properly framed as a motion to strike at all, but is instead an inappropriate supplement to the already-excessive summary judgment briefing.  Exhibits are not stricken (and motions to strike should not be filed in federal court) as a kneejerk reaction whenever a litigant is unhappy with either the contents of an exhibit or the other side's legal arguments drawn from that exhibit.  *See, e.g., Zukowski v. Foss Maritime Co.*, 2013 WL 1966001, *3 (S.D. Ala. May 10, 2013) ("Motions to strike are generally disfavored as time wasters that distract the court from the merits of a party's claim. … To the extent that the parties thought their opponent's exhibits warranted a challenge, a footnote or two in an opposition or reply brief would have sufficed.") (citations omitted); *Essex Ins. Co. v. Foley*, 827 F. Supp.2d 1326, 1327 n.1 (S.D. Ala. 2011) (explaining why it is disfavored and generally (Continued)

## II.   Relevant Facts.[3]

### A.   Overview of King's Employment at STA Mobile.

Samuel King began working for STA Mobile as an airframe, power plant general mechanic ("APG Mechanic") apprentice on September 18, 2006.  (King Dep. (doc. 36, Exh. 3), at 40-41.)  Approximately six months later, STA Mobile promoted King to the position of APG mechanic, skill level I, effective March 11, 2007.  (*Id.* at 73-74.)  In October 2007, King applied for a promotion to the position of APG mechanic, skill level II.  (*Id.* at 97.)  On February 25, 2008, STA Mobile notified King in writing that his promotion to the position of "APG Mechanic (Phase II)" had been approved, and that his base pay would be increased effective January 27, 2008.  (Doc. 36, Exh. 15, at AM00036.)

On or about April 3, 2008, King made an internal complaint to JoAnne Tan, Human Resources Supervisor for STA Mobile, complaining about alleged harassment and discrimination.  (King Dep., at 145-57; doc. 36, Exh. 14.)  He presented his complaints both in writing and orally, and requested transfer to a different work crew.  STA Mobile did not grant that request.  Shortly after plaintiff's internal complaint, on May 21, 2008, STA Mobile prepared

---

inappropriate to strike arguments or other portions of filings simply because they lack merit, or "may suffer from a logical or factual defect") (citation omitted); *English v. CSA Equipment Co.*, 2006 WL 2456030, *2 & n. 5 (S.D. Ala. Aug. 22, 2006) (describing limited circumstances in which draconian remedy of striking material from court file is appropriate); *McGlauflin v. RCC Atlantic Inc.,* 269 F.R.D. 56, 57 (D. Me. 2010) (explaining that motions to strike are disfavored because "[m]odern litigation is too protracted and expensive for the litigants and the court to expend time and effort pruning or polishing the pleadings") (citation omitted); *Exhibit Icons, LLC v. XP Companies, LLC*, 609 F.Supp.2d 1282, 1300 (S.D. Fla. 2009) ("Motions to strike, however, are generally disfavored by the court," and are a "drastic remedy to be resorted to only when required for the purposes of justice") (citations omitted).

[3]       The Court is mindful of its obligation under Rule 56 to construe the record, including all evidence and factual inferences, in the light most favorable to the nonmoving party. *See Skop v. City of Atlanta, GA*, 485 F.3d 1130, 1136 (11th Cir. 2007).  Thus, plaintiff's evidence is taken as true and all justifiable inferences are drawn in his favor.  This is so, even though movant's summary judgment briefs are laden with passages in which defendant insinuates that King's version of the facts is not credible and that he must be lying.  This Court cannot and will not weigh credibility at the summary judgment stage.  *See, e.g., Feliciano v. City of Miami Beach*, 707 F.3d 1244, 1252 (11th Cir. 2013) ("Even if a district court believes that the evidence presented by one side is of doubtful veracity, it is not proper to grant summary judgment on the basis of credibility choices.") (citation and internal quotation marks omitted).

a memorandum announcing that King's pending application for promotion to the position of Senior Mechanic had been denied for the stated reason, "Not enough time at current skill level." (*Id.* at AM00041.)  Plaintiff maintains that he was treated poorly by Jeremy Lewis, the Lead Mechanic to whose crew he was assigned, and that the mistreatment continued unabated after his April 3 complaint.  (King Dep., at 153-54, 192, 232.)  In July 2008, King met with Bob Holloway, an STA Mobile Project Manager, and notified him that Lewis was continuing to harass him.  (King Decl. (doc. 36, Exh. 6), ¶ 5.)  That same day, Holloway disciplined King in writing.

Undeterred by the April 2008 denial, King continued to seek promotion to the position of Senior Mechanic.  To that end, he submitted a "promotion packet" to STA Mobile on or about October 9, 2008.  (King Decl., ¶¶ 13-14.)  On November 6 or 7, 2008, STA Mobile terminated King's employment for the stated reason that he had falsified certain information set forth in that promotion packet.  (*Id.*, ¶ 8.)  An internal memorandum maintained in King's personnel file at STA Mobile documenting the company's official explanation for his termination includes a handwritten notation, "Complaint April 3, 2008."  (Doc. 36, Exh. 15, at AM00062.)

## B.    *Work Environment / Working Conditions.*

King's perception of his working environment at STA Mobile deteriorated markedly beginning in January 2008, when he was assigned to a work crew headed by a Lead Mechanic named Jeremy Lewis, who is white.  (King Dep., at 107-08.)  Lewis subjected King to a near-daily barrage of disparaging comments.  (*Id.* at 158-60.)  In his deposition, King described Lewis as "just a wealth of insults," and indicated, "There were so many instances of – of his brutality that I endured."  (*Id.* at 154, 160.)  On one occasion, for example, Lewis called him "stupid" and "unsafe," embarrassing him in front of the entire crew.  (*Id.* at 158.)  Such verbal attacks by Lewis were, in King's words, an "[a]bsolutely daily occurrence."  (*Id.* at 159.)  King maintains that he "couldn't even get a single job from [Lewis] without him cussing me out for some reason," via comments such as "[t]ake this, motherfucker."  (*Id.* at 297.)  Although Lewis engaged in such conduct towards other crew members "sometimes," he interacted with King in such an abusive manner "all the time" and "every day."  (*Id.*)

According to King, Lewis's unfair and harassing treatment was not confined to derogatory or humiliating comments.  On February 5, 2008, Lewis unilaterally changed King's scheduled days off from Sundays and Mondays to Tuesdays and Wednesdays.  (King Dep., at

-4-

110-12.)  On another occasion, Lewis approached King and "threatened that [his] hours would be cut because [he] filed for FMLA," such that he would be deprived of overtime.  (*Id.* at 332.)[4] More generally, King observed that Lewis would "give all the easier, nicer jobs to the white guys," rather than to black members of the work crew.  (*Id.* at 331.)  By contrast, King was constantly assigned "menial" jobs like bonding wires.  (*Id.* at 337-38.)[5]  In short, Lewis "picked on specifically" King amongst the employees on his crew.  (*Id.* at 181.)  Plaintiff's perception was reinforced by an employee named Lisa Nettles, who "observed that Jeremy Lewis was overly mean and demanding of Mr. King" and that "he treated Mr. King worse than others in that crew."  (Nettles Decl. (doc. 36, Exh. 4), at ¶ 6.)

King also overheard or was otherwise made aware of racially offensive comments by Lewis on two occasions.  On January 24, 2008, King heard Lewis make a comment about "black guys" and, upon asking a co-worker exactly what Lewis had said, learned that Lewis's entire remark was, "I love to fuck over black guys."  (*Id.* at 161-63.)  On March 7, 2008, King heard Lewis address an African-American employee named Wendell Powell as follows: "[G]et up there, monkey boy, and install that panel."  (*Id.* at 174-75.)  King was "[a]bsolutely" offended by the "monkey boy" comment, and both he and Powell were "stunned" by it.  (*Id.* at 175-76.)  On no other occasions, however, did King overhear or learn about other comments by Lewis that he perceived as racially offensive.

Plaintiff's dissatisfactions with his work environment at STA Mobile were not limited to Lewis's remarks and conduct.  Rather, King also testified to other occurrences that he contends rendered the work environment at STA Mobile racially hostile.  Specifically, on one occasion, King and another African-American employee named Robert Chatman saw what they believed

---

[4]     Notwithstanding this statement, King acknowledges that Lewis never made good on his threat and that his overtime hours were not, in fact, reduced.  (*Id.* at 332-33.)

[5]     King elaborated on this point by testifying that Lewis "didn't look to give me jobs that would progress my career or help … me gain knowledge.  He would always send me on me[n]ial jobs, bonding wires, and … he put other people in better jobs, you know."  (*Id.* at 179.) King's testimony was corroborated by his co-worker Wendell Powell, who stated that Lewis assigned King "lesser skilled jobs to perform" as compared to other crew members.  (Powell Decl. (doc. 29, Exh. V), at ¶ 5.)

to be a noose hanging in their workspace.  (King Dep., at 304.)[6]  Seven months later, he noticed another noose in Hangar 1 at STA Mobile.  (*Id.* at 318-20.)  Additionally, King observed STA Mobile Project Manager Bob Holloway in the workplace on an ongoing basis wearing a motorcycle jacket emblazoned with a Confederate flag.  (*Id.* at 301-03.)  From time to time, King would also notice Confederate flag decals on the toolboxes of other employees.  (*Id.* at 305-06.)  And King testified that he observed racial graffiti whenever he went into the bathroom at STA Mobile, up until November 5, 2008.  (*Id.* at 321-22, 326-27.)  Such offensive graffiti "was on the wall every day."  (*Id.* at 325-26.)  King's testimony was clear, however, that he never reported to STA Mobile officials that he had seen the nooses, the Confederate flag decals, or the graffiti.  (*Id.*)[7]

> **C.   *King's Internal Complaints of Race Discrimination.***

On April 3, 2008, King met with Human Resources Supervisor JoAnne Tan and presented her with a detailed written complaint pursuant to STA Mobile's EEO policy.  (King Dep., at 145-50.)  That letter identified what King called "very unfair treatment" at the hands of Lewis, including the following:  (i) Lewis verbally attacked King "at every opportunity" after King was assigned to his crew; (ii) the January 23 incident in which Lewis embarrassed King in front of the crew by calling him "stupid" and "unsafe" because of a mechanical problem that Lewis himself had caused; (iii) the January 24 incident in which Lewis made the comment about "black guys;" (iv) the February 5 incident in which Lewis had changed King's days off to accommodate a contract worker to King's detriment; (v) the March 7 incident in which Lewis made the "monkey boy" comment; and (vi) the March 28 incident in which Lewis had threatened to cut King's hours and eliminate his overtime because King had used FMLA leave to care for his ailing wife.  (Doc. 36, Exh. 14.)  The written complaint concluded, "In closing, [Lewis] has

---

[6]   According to King, what he and Chatman observed was a yellow nylon cord hanging from the ceiling, tied into a hangman's noose.  (*Id.* at 310-14.)  In response to spirited questioning from defense counsel as to whether the cord might have merely had a "small loop" as safety harness ropes often did, King was adamant that "[i]t was a hangman's noose."  (*Id.*)

[7]   With regard to the first noose, plaintiff explains that he did not report it because Chatman complained about the noose to the lead mechanic on Chatman's crew in plaintiff's presence, and the lead mechanic had indicated in plaintiff's presence that he (the lead mechanic) would report the matter to human resources.  (King Dep., at 304-05; King Decl., at ¶ 6.)

total disregards anyone personal or civil rights if you work for him or on his crew, you must do what says no matter what." (*Id.*)  King included in the written report a request for transfer to a different program so that he would no longer report to Lewis.

Upon receipt of this internal complaint, Tan promised King that "she would investigate and get back with [him]." (King Dep., at 183.)  Yet Tan never contacted King or provided any information to him about the status, conclusion or results of any investigation she may have undertaken in response to his complaint. (*Id.*)  Indeed, King's testimony is that he received no feedback or updates from Tan or anyone else at STA Mobile concerning his written EEO complaint. (*Id.* at 151.)  This is so, even though King followed up with Tan after another incident in which Lewis insulted him and made King so upset that he went back to Tan and told her, "I'm just tired of being harassed, and is there anything going to come out of me making a complaint." (*Id.* at 155-56.)  At that time, King reiterated his request to be transferred, but neither Tan nor anyone at STA Mobile ever responded. (*Id.*)  Because of Lewis's adverse treatment, King was "constantly upset at work." (King Decl., ¶ 17.)  Such mistreatment interfered with King's performance, and caused him to miss work because of illness and other reasons more often than he otherwise would have. (*Id.*)

On at least two other occasions, King reported continuing concerns of unfair treatment by Lewis to STA Mobile managers.  In July 2008, King notified project manager Bob Holloway that Lewis "was continuing to harass" him. (King Decl., at ¶ 5; King Dep., at 231-32.)  On October 15, 2008, King was asked by STA Mobile's Human Resources Manager, Richard Wellington, whether he was still being discriminated against.  King answered affirmatively, and provided Wellington with specific examples that he was being given undesirable job assignments such as bonding wires, that he had been denied an opportunity to attend a two-week Airbus training program, and that Lewis was still treating him poorly. (King Dep., at 258-61, 264.)

### D.    *King's Non-Promotion in April 2008 and October 2008.*

In April 2008, King submitted a promotion packet seeking consideration for the position of Senior Mechanic. (King Dep., at 211-12.)  At some point, STA Mobile notified King that this request for promotion had been denied. (*Id.* at 219.)  STA Mobile officials never gave King any explanation for turning down his promotion request. (*Id.* at 220-21.)  King's application was denied even though project manager Salvatore Esposito had recommended him for the promotion. (Wellington Decl. (doc. 29, Exh. C), at ¶ 7.)  An undated STA Mobile form reflects

that King's request for promotion was denied for the reason, "No Time." (King Dep., Exh. 17 at AM00040.) And an internal memorandum (which King never received) specified that King's request was being denied for "Not enough time at current skill level," but that "his skill level will be reviewed again in the next Promotion Panel," which was to occur in July 2008. (*Id.* at AM00041; King Dep., at 218.)

In October 2008, King once again submitted a promotion packet seeking consideration for the position of Senior Mechanic. (King Dep., at 229-30, 247-48.) King turned in his promotion packet to Holloway on October 9, 2008. (*Id.* at 249-51, 253.) That packet included a form in which a lead named Lee Cobbett had recommended King for promotion. (*Id.* at 252-53.) King did not receive the promotion, and in fact did not hear anything about the status of his promotion request until STA Mobile fired him in November 2008. (*Id.* at 257.)

> **E.    King's Discharge in November 2008.**

On October 15, 2008, defendant's HR Manager, Wellington, approached King and inquired whether he had any continuing complaints about Lewis. (Wellington Decl. (doc. 29, Exh. C), at ¶ 5.) King responded affirmatively, addressing multiple areas in which he felt he was still being treated unfairly and harassed by Lewis, and also stated that he felt he had been denied Airbus training opportunities in a "discriminatory" fashion. (*Id.* at ¶¶ 5-6.) Upon hearing plaintiff's new complaints of discrimination, Wellington shifted gears and began to press King (in the very same conversation) about "why certain dates would be incorrect" in an on-the-job training summary form (the "OJT Form") contained in his promotion packet. (King Decl., ¶ 7.) Wellington did not initially show the subject document to King; however, King responded that there must have been a mistake. (*Id.*) When Wellington then showed King the OJT Form, King reviewed it and flatly advised Wellington "that was not the document [he] had submitted to Mr. Holloway." (*Id.*) In other words, King told Wellington that the OJT Form whose contents Wellington was questioning was not the actual document that King had submitted to Holloway as part of his October 2008 promotion packet.

King's explanation for how he could discern that the OJT Form Wellington showed him was not the one he had submitted was straightforward. The form that Wellington showed him had a final date of April 25, 2008, approximately six months earlier. (King Decl., ¶ 12; doc. 36, Exh. 12, at Exh. 20.) But King knew that the form he had prepared and submitted with his promotion packet went all the way through October 9, 2008, including references to literally

dozens of jobs King had completed between April 2008 and October 2008 to demonstrate his proficiency at Level III work (as needed to show eligibility for the promotion).  (King Decl., ¶ 13 & Exh. 1.)  Because the OJT Form that Wellington showed him omitted references to those numerous jobs through October 9, 2008, King knew it was not the form he had submitted with his promotion packet.[8]  King is adamant that he did not falsify any information in the OJT Form

---

[8]     On this point, STA Mobile insists in its Motion to Strike that Paragraph 13 of King's Declaration (the paragraph in which he avers that the OJT Form Wellington showed him was not the OJT Form King had submitted with his promotion paperwork) must be stricken pursuant the "sham affidavit" rule.  That rule provides that, "[w]hen a party has given clear answers to unambiguous questions which negate the existence of any genuine issue of material fact, that party cannot thereafter create such an issue with an affidavit that merely contradicts, without explanation, previously given clear testimony."  *Croom v. Balkwill*, 645 F.3d 1240, 1253 n.18 (11th Cir. 2011) (citation omitted).  "A court may determine that an affidavit is a sham when it contradicts previous deposition testimony and the party submitting the affidavit does not give any valid explanation for the contradiction."  *Latimer v. Roaring Toyz, Inc.*, 601 F.3d 1224, 1237 (11th Cir. 2010).

In that regard, defendant points to a deposition excerpt in which King answered, "It appears to be," when asked whether a copy of the form Wellington had showed him on October 15, 2008 (which copy was Exhibit 20 to King's deposition) was the same document King had given to Holloway with his promotion packet.  (King Dep., at 267-68.)  That deposition testimony does indeed conflict with Paragraphs 7, 13 and 15 of King's Declaration; however, King has explained that he was confused by defense counsel's questions and that he had thought counsel was asking whether Exhibit 20 was a copy of the same document Wellington had shown him, not whether Exhibit 20 was a copy of the document he had turned in with his promotion packet.  (King Decl., ¶ 15.)  King's explanation of confusion is bolstered by his own deposition testimony, where he clearly indicated that he told Wellington, "this is not the form that I submitted."  (King Dep., at 267.)  The tension between King's answers to similar questions at the same juncture of his deposition raises a reasonable inference that he misheard, was confused, or otherwise did not understand what he was being asked.  Moreover, any such confusion could be deemed genuine by the jury, given (i) the many hours of tedious deposition testimony he had already given that day; and (ii) the series of questions posed by defense counsel inquiring about two different concepts (whether a particular exhibit was the same document King gave to Holloway, and whether it was the same document Wellington showed King), sometimes even in the same question.  Compounding the potential for confusion was King's tendency to begin answering questions before his interrogator had finished posing them, rendering it unclear in various instances whether the question King thought he was answering was the same one being asked.  Put it all together, and plaintiff has offered at least a plausible explanation for the inconsistency between his declaration statement and his prior deposition testimony.  The sham affidavit rule does not apply where a party has offered an explanation for the discrepancy, so long as the explanation "does not appear to us to be itself a complete sham."  *McCormick v. City of Fort Lauderdale*, 333 F.3d 1234, 1240 n.7 (11th Cir. 2003) (accepting contradictory affidavit submitted on summary judgment).  Whatever else may be said about it, King's explanation does (Continued)

he submitted to Holloway.  (King Decl., ¶ 11.)  Indeed, he explains that it would have been pointless for him to do so, because he "just had all the qualifications [he] need[ed]" for the promotion.  (King Dep., at 266 (given his credentials and training, "[t]here's no point to cheat on an OJT sheet").)

Wellington did not pursue the matter further with King that day, and did not lead King to believe that there were lingering concerns about his explanation for the OJT Form.  (King Decl., ¶ 8.)  On November 6, 2008, however, Lewis abruptly escorted King to the office, treating him "rudely" in unspecified ways.  (*Id.*, ¶ 9.)  Upon reaching the office, King confronted a room full of "at least six or seven" managers.  (King Dep., at 273; King Decl., ¶¶ 8-9.)  The assembled managers asked no questions and engaged him in no discussion, but simply told King pointblank that he "was being released."  (King Dep., at 275.)  They did not mention the OJT Form, or inquire about that form.  (*Id.*)  They provided King with no reason for his discharge, and refused to elaborate when he requested the courtesy of an explanation.  (*Id.*; King Decl., ¶ 10.)  STA Mobile security then escorted King out of the building, without even pausing long enough to allow him to collect his toolbox or other belongings.  (King Decl., ¶ 10.)

A short typewritten memorandum placed in King's personnel file recites STA Mobile's official reason for terminating his employment as "Falsifying OJT Summary Form."  (Doc. 36, Exh. 15, at AM00062.)[9]  The memorandum states that King's OJT Form "appeared to be a copy

---

not appear to be a complete sham; therefore, defendant's Motion to Strike is **denied** insofar as it seeks rejection of Paragraphs 7, 13 and 15 of plaintiff's declaration under the "sham affidavit" rule.  The ultimate credibility of King's facially plausible explanation is for the finder of fact, not for this Court to evaluate on summary judgment.  *See id.* ("Although McCormick's explanations may not credibly withstand cross-examination, weighing the contradictory statements along with the explanations for those contradictions are judgments of credibility" that are "appropriately made by a finder of fact and not a court deciding summary judgment.").

[9]      Remarkably, defendant argues in its Motion to Strike that this memorandum should be stricken because "[t]he *unauthenticated* document is inadmissible as a matter of law. Fed.R.Evid. 901."  (Doc. 44, at 8.)  In so arguing, STA Mobile does not contest that it produced this exhibit in discovery or that such document was found in precisely this form in King's personnel file maintained by STA Mobile.  The authentication argument approaches frivolity.  After all, authenticity of this document can readily, obviously be established at trial by calling STA Mobile's custodian of records to the stand, if necessary.  This exhibit is properly considered on summary judgment.  *See, e.g., Rowell v. BellSouth Corp.*, 433 F.3d 794, 800 (11th Cir. 2005) (on motion for summary judgment, courts consider "only that evidence which can be reduced to (Continued)

of one that another employee (Lakeesha Cannon) had submitted form [*sic*] a previous promotion panel," and that certain dates on the form were "found to be before Mr. King hire date of 9/18/06." (*Id.*)  Just below this typewritten explanation on the memo in King's personnel file is prominent handwritten text reading, "Complaint April 3, 2008." (*Id.*)

## III.   Summary Judgment Standard.

Summary judgment should be granted only "if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law."  Rule 56(a), Fed.R.Civ.P.  The party seeking summary judgment bears "the initial burden to show the district court, by reference to materials on file, that there are no genuine issues of material fact that should be decided at trial."  *Clark v. Coats & Clark, Inc.,* 929 F.2d 604, 608 (11th Cir. 1991).  Once the moving party has satisfied its responsibility, the burden shifts to the non-movant to show the existence of a genuine issue of material fact.  *Id.*  "If the nonmoving party fails to make 'a sufficient showing on an essential element of her case with respect to which she has the burden of proof,' the moving party is entitled to summary judgment."  *Id.*  (quoting *Celotex Corp. v. Catrett*, 477 U.S. 317 (1986)) (footnote omitted).  "In reviewing whether the nonmoving party has met its burden, the court must stop short of weighing the evidence and making credibility determinations of the truth of the matter.  Instead, the evidence of the non-movant is to be believed, and all justifiable inferences are to be drawn in his favor."  *Tipton v. Bergrohr GMBH-Siegen*, 965 F.2d 994, 999 (11th Cir. 1992) (internal citations and quotations omitted).  "Summary judgment is justified only for those cases devoid of any need for factual determinations."  *Offshore Aviation v. Transcon Lines, Inc.*, 831 F.2d 1013, 1016 (11th Cir. 1987) (citation omitted).

The Eleventh Circuit has expressly rejected the notion that summary judgment should seldom be used in employment discrimination cases because they involve issues of motivation and intent.  *See Wilson v. B/E Aerospace, Inc.*, 376 F.3d 1079 (11th Cir. 2004).  Rather, "the

an admissible form"); *Prince Hotel, S.A. v. Blake Marine Group*, 2012 WL 4711897, *1 n.5 (S.D. Ala. Oct. 2, 2012) ("Even unauthenticated or otherwise inadmissible evidence is properly considered on summary judgment so long as it can be reduced to admissible form at trial.").  The Motion to Strike is **denied** insofar as it seeks to have the termination memorandum stricken on the ground that it is not authenticated.

summary judgment rule applies in job discrimination cases just as in other cases.  No thumb is to be placed on either side of the scale."  *Id.* at 1086 (citation omitted); *see also Williamson v. Clarke County Dep't of Human Resources*, 834 F. Supp.2d 1310, 1318 (S.D. Ala. 2011) (recognizing and applying rule that summary judgment standard is applied equally in employment discrimination cases as in other kinds of federal actions).

## IV.   Analysis.

### A.   Limitations / Timeliness Issues.

As a threshold matter, defendant argues that certain of King's statutory claims are time-barred.  Recall that King's causes of action against STA Mobile sound in the following theories: (i) Title VII claims of race discrimination, racially hostile work environment and retaliation; (ii) Section 1981 claims of race discrimination and retaliation; and (iii) an ADEA claim of age-based discrimination as to compensation, retention and other terms and conditions of employment.[10] STA Mobile challenges the timeliness of some (albeit not all) of these claims.

### 1.   Timeliness of Title VII / ADEA Causes of Action.

With respect to King's Title VII and ADEA causes of action, STA Mobile argues that they are untimely insofar as they relate to events predating November 6, 2008.  It is black-letter law that a plaintiff may not sue under Title VII or ADEA without first exhausting administrative remedies by filing a timely charge of discrimination with the appropriate agency (in this case, the EEOC).  *See Wilkerson v. Grinnell Corp.*, 270 F.3d 1314, 1317 (11th Cir. 2001) ("Before a

---

[10]      In its reply brief, defendant maintains that King "abandoned" an ADEA termination claim by not addressing it in his brief.  (Doc. 45, at 1 n.2.)  This contention is mistaken as a matter of fact and law.  Factually, plaintiff never asserted a termination claim in the ADEA section of his Complaint.  (Doc. 1, ¶ 87.)  A plaintiff cannot abandon a claim on summary judgment that he never brought in the first place.  Legally, the notion that a plaintiff who fails to address a particular claim on summary judgment has abandoned it, such that the claim may be automatically dismissed without substantive review, is incorrect.  *See, e.g., Branch Banking and Trust Co. v. Howard*, 2013 WL 951652, *3 (S.D. Ala. Mar. 8, 2013) ("Summary judgment is not automatically granted by virtue of a non-movant's silence."); *United States v. One Piece of Real Property Located at 5800 SW 74th Ave., Miami, Fla.*, 363 F.3d 1099, 1101 (11th Cir. 2004) (holding that "the district court cannot base the entry of summary judgment on the mere fact that the motion was unopposed, but, rather, must consider the merits of the motion … [and] ensure that the motion itself is supported by evidentiary materials."); Commentary to 2010 Amendments to Fed.R.Civ.P. 56(e) ("summary judgment cannot be granted by default even when there is a complete failure to respond to the motion").

potential plaintiff may sue for discrimination under Title VII, she must first exhaust her administrative remedies" by "filing a timely charge of discrimination with the EEOC."); *Leach v. State Farm Mut. Auto. Ins. Co.*, 2011 WL 2118723, *3 (11th Cir. May 27, 2011) ("Under the ADEA, a plaintiff must exhaust available administrative remedies by filing a charge of unlawful discrimination with the EEOC before filing suit.").  "In a non-deferral state such as Alabama, the deadline for filing is 180 days after the alleged discriminatory act." *Carter v. University of South Alabama Children's & Women's Hosp.*, 510 F. Supp.2d 596, 606 (S.D. Ala. 2007); *see also Jones v. Dillard's, Inc.*, 331 F.3d 1259, 1269 (11th Cir. 2003) ("Under the ADEA, a plaintiff has 180 days from the occurrence of the allegedly unlawful practice to file a charge of age discrimination with the EEOC.").  If the plaintiff does not file a timely charge with the EEOC, claims for acts that lie outside of that 180-day period are barred.  *See, e.g., Ledbetter v. Goodyear Tire and Rubber Co.*, 421 F.3d 1169, 1178 (11th Cir. 2005) ("only those practices that occurred within 180 days of the operative EEOC charge can form the basis for Title VII liability") (internal brackets and quotation marks omitted).

King filed his EEOC Charge against STA Mobile on May 5, 2009.  (Doc. 1, Exh. A.)  As such, straightforward application of the above principles prompts a conclusion that all of King's Title VII and ADEA claims relating to practices occurring before November 6, 2008 (*i.e.*, 180 days before the May 5, 2009 EEOC charge-filing date) are time-barred.  This conclusion would embrace Title VII and ADEA claims relating to the denial of a promotion in April 2008, Title VII claims of racially discriminatory "work assignments, discipline, … [and] overtime" (doc. 1, at ¶ 60), and ADEA claims of age discrimination as to "compensation, retention, and other terms and conditions of his employment" (doc. 1, at ¶ 87); therefore, those claims are **dismissed** as untimely.

Defendant also argues that King's Title VII claims of hostile work environment are time-barred by the same principle.  In that regard, STA Mobile reasons, all events of alleged racial harassment (including insults and humiliation by Lewis; exposure to racial graffiti, nooses and Confederate flag emblems; and Lewis's "monkey boy" and "black guys" remarks) occurred prior to November 6, 2008, and were therefore outside the 180-day period.  Plaintiff responds that "the hostile work environment continued up until, and through, the day of King's termination," such that the entire Title VII claim of racially hostile work environment is timely under a "continuing violation" theory.  (Doc. 37, at 28-29.)  Unhelpfully, plaintiff omits citations to legal authority or

substantive discussion of the doctrine and its application to record facts.  Nonetheless, the Court observes that, for continuing violation purposes, "as long as an act contributing to the hostile work environment claim occurs within the filing period, the entire time period of the hostile environment may be considered by a court for the purposes of determining liability." *McCann v. Tillman*, 526 F.3d 1370, 1379 n.10 (11th Cir. 2008) (citation and internal marks omitted).[11]  Of course, "[t]he pivotal question is whether the timely discrete acts are sufficiently related to the hostile work environment." *Chambless v. Louisiana-Pacific Corp.*, 481 F.3d 1345, 1350 (11th Cir. 2007).  To answer that question, the Eleventh Circuit instructs, one must determine whether "those discrete acts were the same type of discriminatory intimidation, ridicule and insult that characterized the untimely allegations." *Id.* (citation and internal quotation marks omitted); *see also Menefee v. Montgomery County Bd. of Educ.*, 2005 WL 1444211, *1 (11th Cir. June 21, 2005) ("For an act to be considered part of an actionable hostile work environment claim, it must be of a sexual or gender-related nature" in the case of a sexually hostile work environment) (citation and internal quotation marks omitted).[12]

---

[11]       *See also Chambless v. Louisiana-Pacific Corp.*, 481 F.3d 1345, 1349-50 (11th Cir. 2007) ("[H]ostile work environment claims continue to occur over time. … Thus, the entire time period of the hostile environment may be considered by a court for the purposes of determining liability if an act relating to the claim occurred within the filing period.") (citations omitted); *Watson v. Blue Circle, Inc.,* 324 F.3d 1252, 1258 (11th Cir. 2003) ("[A] hostile work environment, although comprised of a series of separate acts, constitutes one 'unlawful employment practice,' and so long as one act contributing to the claim occurs within the filing period, 'the entire time period of the hostile environment may be considered by a court for the purposes of determining liability.'") (citation omitted); *Shields v. Fort James Corp.*, 305 F.3d 1280, 1282 (11th Cir. 2002) (similar).

[12]       Authority from other circuits formulates the inquiry in similar fashion.  *See Duncan v. Manager, Dep't of Safety, City and County of Denver*, 397 F.3d 1300, 1309 (10th Cir. 2005) ("To determine whether these acts are part of the same hostile work environment, *Morgan* advises looking at the type of these acts, the frequency of the acts, and the perpetrator of the acts."); *Rowe v. Hussman Corp.*, 381 F.3d 775, 781 (8th Cir. 2004) ("we conclude as a matter of law that the acts before and after the limitations period were so similar in nature, frequency, and severity that they must be considered to be part and parcel of the hostile work environment that constituted the unlawful employment practice that gave rise to this action"); *Butler v. MBNA Technology, Inc.*, 2004 WL 2244203, *2 (5th Cir. Sept. 24, 2004) (applying circuit precedent to examine three factors in determining whether pre-limitations period acts and post-limitations period acts are a continuing violation: "(1) whether the alleged acts involve the same type of discrimination, tending to connect them in a continuing violation; (2) whether the acts are in the (Continued)

King argues that several events on November 6, 2008 (the 180th day and the date of his discharge) contributed to or were otherwise related to the racially hostile work environment about which he complains.  First, King says that Lewis "treated [him] rudely" while escorting him to the office for his termination meeting.  (King Decl., ¶ 9.)  This allegation is not of the same type, nature or severity as plaintiff's pre-November 6 allegations.  Recall that the hostile work environment about which King complains includes allegations of "brutality" by Lewis on a daily basis, including "a wealth of insults" (such as calling King "stupid" or a "fool" or cursing him in the presence of others) and occasional racially-charged remarks; as well as exposure to racially offensive graffiti, imagery and nooses in the workplace.  Mere "rudeness" is an entirely distinct "type" of act that does not contribute to King's hostile environment claim in any discernable way.  King has presented no evidence or allegation that Lewis (or anyone else at STA Mobile) was ever "rude" to him at any other time on any other date.  Nor has King identified any racial or racially-offensive aspect of Lewis's acts of November 6, 2008.  Under the circumstances, the Court concludes that Lewis's "rude" conduct within the 180-day limitations period was not part of the purported racially hostile work environment, and therefore cannot transform untimely allegations into timely allegations via the continuing violations doctrine.[13]  Certainly, plaintiff has developed no meaningful legal argument to the contrary, but has instead relied on a conclusory statement in a brief that "the hostile work environment continued up until, and through, the day of King's termination."  (Doc. 37, at 28.)[14]

---

nature of recurring events, or are more in the nature of isolated events; and (3) whether the act or acts have the degree of permanence that should alert an employee to assert his rights").

[13]     Plaintiff offers no evidence, for example, that Lewis called King derogatory names or made references to "monkey boys" or "black guys" while he walked King to the office on November 6, 2008.  He just says that Lewis was "rude."  Nowhere in the record is there evidence that Lewis was rude to King at any other time, much less that there was a racial dimension to such rudeness.

[14]     This Court will not develop a litigant's summary judgment argument for him. *See, e.g., Case v. Eslinger*, 555 F.3d 1317, 1329 (11th Cir. 2009) (noting that a litigant "cannot readily complain about the entry of a summary judgment order that did not consider an argument they chose not to develop for the district court at the time of the summary judgment motions") (citation omitted); *Selman v. CitiMortgage, Inc.*, 2013 WL 838193, *15 n.24 (S.D. Ala. Mar. 5, 2013) ("This Court cannot and will not fill in the blanks for an argument that plaintiffs have not (Continued)

Second, plaintiff insinuates that the hostile work environment was advanced or promoted in some way by the manner in which STA Mobile management implemented the termination.  In particular, King complains that management refused to tell him why he was fired, declined to grant him an audience with the company president, and summarily ejected him from the premises.  (Doc. 37, at 28.)  What these facts have to do with a racially hostile environment, plaintiff does not say.  These were different acts performed by different actors than the events that King says constituted a racially hostile work environment at STA Mobile.  Moreover, these acts have no perceptible racial component.  How could they have contributed to a racially hostile work environment?  Plaintiff does not explain.  On this record, the Court perceives no viable argument (and plaintiff offers none) that these acts were sufficiently related to the pre-November 6, 2008 conduct that they might reasonably be viewed as part and parcel of the racially hostile work environment about which King is complaining.  Besides, all of these acts occurred after King's discharge, so they cannot logically be classified as part of his "work environment" because he was no longer working for STA Mobile.

Third, plaintiff maintains that he "has raised a fact issue as to whether the final day of employment was November 6 or November 7, 2008," such that "Plaintiff's EEOC Charge filing would have been well within 180 days of the last date of his employment."  (Doc. 37, at 28.)  But the question remains:  What timely discrete acts are sufficiently related to the hostile work environment to trigger the continuing violation doctrine?  Irrespective of whether King's last day was November 6 or November 7, he still must show that an act contributing to the hostile work environment occurred within the 180-day period (*i.e.*, on or after November 6, 2008).  If King was fired on November 7, then he still must show that some part of the hostile work environment occurred on November 6 or 7.  This he has not done.

In light of the foregoing, the Court concludes that King's Title VII hostile work environment claim is time-barred because the record is devoid of evidence that any act contributing to the hostile work environment occurred during the 180-day period preceding

---

developed."); *York v. Day Transfer Co.*, 525 F. Supp.2d 289, 301 n.10 (D.R.I. 2007) ("It is not enough merely to mention a possible argument in the most skeletal way, leaving the court to do counsel's work, create the ossature for the argument, and put flesh on its bones.") (citation omitted).

King's filing of an EEOC charge on May 5, 2009.  Plaintiff's evidence reveals no continuing violation that spills over into that 180-day period; therefore, plaintiff's Title VII hostile work environment claim is properly **dismissed** for failure timely to exhaust administrative remedies.  Because the only hostile work environment claim joined in this litigation sounds under Title VII, the hostile work environment issue is no longer part of this case.[15]

## 2.    *Timeliness of Section 1981 Causes of Action.*

In contrast to Title VII claims, there is no parallel administrative exhaustion requirement for race discrimination claims brought under § 1981.  *See, e.g,, Price v. M & H Valve Co.*, 2006 WL 897231, *9 (11th Cir. Apr. 7, 2006) ("a plaintiff is not required to exhaust his administrative remedies before filing a § 1981 action in federal court"); *Sanders v. City of Montgomery*, 319 F.Supp.2d 1296, 1311 (M.D.Ala.2004) ("Unlike their counterparts brought pursuant to Title VII,

---

[15]    Plaintiff's summary judgment brief suggests that a § 1981 claim of a racially hostile work environment would unquestionably be timely under the continuing violation doctrine.  (Doc. 37, at 28-29.)  But plaintiff has not pleaded such a claim in his Complaint.  Count Two of the Complaint is labeled "Title VII – Race Discrimination (Hostile Work Environment)."  (Doc. 1, at 10.)  It does not invoke § 1981.  The only § 1981 claims are Counts Four and Five of the Complaint.  Count Four alleges that, at STA Mobile, "Black employees and white employees were not treated similarly, including with regard to work assignments, discipline, consideration for promotions, overtime, and termination."  (Doc. 1, at 14.)  It says nothing about a hostile work environment, and nothing in Count Four could reasonably be read as predicating King's § 1981 claim on the existence of a racially hostile work environment.  Likewise, Count Five is confined to a § 1981 retaliation claim, and makes no allegations about a hostile work environment.  Plaintiff having brought no § 1981 claim alleging a racially hostile work environment, he cannot utilize his summary judgment briefs to effect a *de facto* amendment of the pleadings to interpose such a claim for the first time.  *See, e.g., GeorgiaCarry.Org, Inc. v. Georgia*, 687 F.3d 1244, 1258 n.27 (11th Cir. 2012) ("It is well-settled in this circuit that a plaintiff may not amend the complaint through argument at the summary judgment phase of proceedings."); *Godfrey v. Nationwide Vinyl Siding & Home Imp., LLC*, --- F. Supp.2d ----, 2012 WL 6569292, *12 n.23 (S.D. Ala. Dec. 14, 2012) ("Plaintiffs cannot use their summary judgment brief as a *de facto* amendment to their pleadings.").  The same rationale defeats plaintiff's suggestion in his brief that "questions of fact have been created as to a retaliatory hostile environment claim under both Title VII & § 1981 in this matter."  (Doc. 37, at 25-26.)  The Complaint is devoid of any such "retaliatory hostile environment claim" under any statute, and plaintiff cannot now amend the pleading via summary judgment brief to add new causes of action.  Claims for racially hostile work environment under § 1981 or retaliatory hostile work environment under Title VII or § 1981 simply are not now, and never have been, properly joined in this action.  No amendment to join such causes of action may be effected via Rule 56 brief.

claims of race discrimination pursuant to Section 1981 do not require timely exhaustion of administrative remedies with the EEOC prior to suit.").  Therefore, the 180-day exhaustion rule does not apply, nor is there any analogue in the § 1981 context.  That said, a § 1981 claim still must be timely filed.  Pursuant to 28 U.S.C. §1658(a), the default limitations period is four years for federal causes of action created after December 1, 1990; however, a two-year limitations period still applies to certain claims brought under § 1981.  *See, e.g., Jones v. R.R. Donnelley & Sons Co.*, 541 U.S. 369, 383-84, 124 S.Ct. 1836, 158 L.Ed.2d 645 (2004); *Clark v. APAC Mid-South, Inc.*, --- F. Supp.2d ----, 2012 WL 6186012, *5 (N.D. Ala. Dec. 6, 2012) (similar).

Here, the parties agree that King's § 1981 claims are subject to the four-year limitations period prescribed by § 1658(a).  (Doc. 31, at 21; doc. 37, at 28-29.)  As such, plaintiff's § 1981 claims are timely to the extent they are based on events occurring on or after May 30, 2008 (four years before plaintiff filed suit in this District Court).  Stated differently, any § 1981 claims by King based on alleged acts of race discrimination predating May 30, 2008 are time-barred because they were not brought within the four-year limitations period.  Plaintiff's § 1981 claim relating to the denial of a promotion in April 2008 is obviously untimely, and is therefore **dismissed**.  King's § 1981 claims based on alleged acts of discrimination post-dating May 30, 2008 are timely, and will be considered on the merits.

### 3. *Remaining Timely Causes of Action.*

After analysis of STA Mobile's limitations challenge, the only causes of action asserted by King that are timely and will be considered on the merits consist of the following: (i) Title VII, ADEA and § 1981 claims for race-based and age-based discriminatory denial of promotion in October 2008;[16] (ii) Title VII and § 1981 claims for racially discriminatory termination in November 2008; (iii) § 1981 claims for racial discrimination and retaliation as to "work assignments, discipline, … [and] overtime" for events occurring after May 30, 2008 (doc. 1, at

---

[16]    Even though the promotion decision may have been made in October 2008 (outside the 180-day period), these claims satisfy the Title VII / ADEA exhaustion requirement because, as defendant admits, "King did not know of the denial of promotion until he was terminated on November 6th."  (Doc. 31, at 20.)  *See, e.g., Grayson v. K Mart Corp.*, 76 F.3d 1086, 1100 n.19 (11th Cir. 1996) ("the time for filing an EEOC charge begins to run when the employee received unequivocal notice of the adverse employment decision").

¶¶ 77, 81); (iv) Title VII and § 1981 claims for retaliatory denial of promotion in October 2008; and (v) Title VII and § 1981 claims for retaliatory termination in November 2008.

### B.   McDonnell Douglas *Framework.*

Defendant's Motion for Summary Judgment is properly evaluated under the time-honored *McDonnell Douglas* standard.  Although plaintiff frames this action as a direct evidence case (at least with respect to his retaliation claims), it is not.[17]  Therefore, to be entitled to summary judgment on any of King's claims, STA Mobile must make a showing of circumstantial evidence that satisfies the test set forth in *McDonnell Douglas Corp. v. Green*, 411 U.S. 792, 93 S.Ct. 1817, 36 L.Ed.2d 668 (1973).  Under this familiar burden-shifting analysis, plaintiff is required to make out a *prima facie* case of discrimination.  The exact contours of that *prima facie* showing vary depending on the exact nature of the claim; however, the plaintiff's burden is not heavy.  *See, e.g., Crapp v. City of Miami Beach*, 242 F.3d 1017, 1020 (11th Cir. 2001) ("the *prima facie* requirement is not an onerous one").

At that point, "the burden shifts to the employer to articulate some legitimate, nondiscriminatory reason for the adverse employment action ….  If the employer does this, the

---

[17]      In particular, King insists that the record contains a "'smoking gun' establishing direct evidence of retaliatory intent – the memorandum regarding Plaintiff's termination placed in Plaintiff's personnel file with the bold handwritten statement, 'Complaint April 3, 2008.'" (Doc. 37, at 22 (emphasis omitted).)  This is not direct evidence.  "Direct evidence of discrimination is evidence that, if believed, proves the existence of a fact without inference or presumption. … Under Eleventh Circuit law, only the most blatant remarks, whose intent could mean nothing other than to discriminate on the basis of some impermissible factor constitute direct evidence of discrimination."  *Dixon v. The Hallmark Companies, Inc.*, 627 F.3d 849, 854 (11th Cir. 2010) (citations and internal quotation marks omitted); *see also Sims v. MVM, Inc.*, 704 F.3d 1327, 1333 n.4 (11th Cir. 2013) ("direct evidence must conclusively show that the employee was discriminated against without any inference or presumption").  In this Circuit, the paradigmatic example of direct evidence of discrimination is an internal memorandum reading, "Fire Earley – he is too old."  *Earley v. Champion Int'l Corp.*, 907 F.2d 1077, 1081 (11th Cir. 1990).  The notation on King's termination memorandum may well raise an inference of retaliatory intent, as discussed *infra*.  But it plainly does not prove retaliation without inference or presumption.  The memo does not state, "Fire King – he brought an internal complaint of race discrimination."  At most, it creates an inference that the discharge and the internal EEO complaint were causally related.  That is not good enough to satisfy the high bar of direct evidence.  In short, because the purported "smoking gun" identified by plaintiff does not prove a retaliatory motive without inference or presumption, it fails to satisfy the Eleventh Circuit's rigorous, narrowly circumscribed definition of "direct evidence" of retaliation.  Accordingly, the traditional circumstantial-proof framework governs.

burden shifts back to the plaintiff to show that the employer's stated reason was a pretext for discrimination." *Crawford v. Carroll*, 529 F.3d 961, 976 (11th Cir. 2008) (citations and internal quotation marks omitted).  A plaintiff may establish pretext "either directly by persuading the court that a discriminatory reason more likely motivated the employer or indirectly by showing that the employer's proffered explanation is unworthy of credence." *Brooks v. County Comm'n of Jefferson County, Ala.*, 446 F.3d 1160, 1163 (11th Cir. 2006) (quotation omitted).  Either way, "[i]f the proffered reason is one that might motivate a reasonable employer, a plaintiff cannot recast the reason but must meet it head on and rebut it. … Quarreling with that reason is not sufficient." *Wilson*, 376 F.3d at 1088; *see also Rioux v. City of Atlanta, Ga.*, 520 F.3d 1269, 1278 (11th Cir. 2008) ("It is the plaintiff's burden not merely to raise a suspicion regarding an improper motive, but rather to demonstrate there is a genuine issue of material fact that the employer's proffered reason … was pretextual.").  "The ultimate burden of persuading the trier of fact that the defendant intentionally discriminated against the plaintiff remains at all times with the plaintiff." *Springer v. Convergys Customer Management Group Inc.*, 509 F.3d 1344, 1347 (11th Cir. 2007).  Thus, "[i]f the plaintiff does not proffer sufficient evidence to create a genuine issue of material fact regarding whether each of the defendant employer's articulated reasons is pretextual, the employer is entitled to summary judgment." *Chapman v. AI Transport*, 229 F.3d 1012, 1024-25 (11th Cir. 2000) (*en banc*).

### C.   *Retaliation Claims.*

As noted, King has asserted timely Title VII and § 1981 claims of retaliation against STA Mobile relating to defendant's failure to promote him in October 2008, and defendant's termination of his employment in November 2008.  King has also asserted a timely § 1981 claim of retaliation alleging that STA Mobile treated him unfavorably as to work assignments, discipline and overtime after May 30, 2008.

To establish a *prima facie* case of retaliation under Title VII, a plaintiff must show that "(1) she engaged in statutorily protected activity; (2) she suffered a materially adverse employment action; and (3) there was a causal link between the two." *Gowski v. Peake*, 682 F.3d 1299, 1311 (11th Cir. 2012) (citation omitted); *see also Butler v. Alabama Dep't of Transp.*, 536 F.3d 1209, 1212-13 (11th Cir. 2008) ("To establish a claim of retaliation under Title VII or section 1981, a plaintiff must prove that he engaged in statutorily protected activity, he suffered a materially adverse action, and there was some causal relation between the two events.") (citation

omitted).[18]  If the employer articulates a legitimate reason for the challenged action, then the plaintiff must "show that the employer's proffered reasons for taking the adverse action were actually a pretext for prohibited retaliatory conduct."  *McCann*, 526 F.3d at 1375 (citation omitted); *see also Hill v. Wal-Mart Stores, Inc.*, 2013 WL 646376, *2 (11th Cir. Feb. 22, 2013) ("If a plaintiff-employee makes out a *prima facie* case of retaliation, and the employer articulates a legitimate, non-discriminatory reason for the action, the plaintiff must show, by a preponderance of the evidence, that the employer's reason is pretextual.").

### 1.   Work Assignments, Discipline, and Overtime.

A fair reading of Count Five of the Complaint is that plaintiff has asserted § 1981 retaliation claims based on retaliatory work assignments, discipline and overtime.  (*See* doc. 1, at ¶¶ 81-82.)  As discussed *supra*, these claims are timely to the extent they relate to events occurring after May 30, 2008.  Defendant now moves for summary judgment as to this portion of Count Five, in response to which plaintiff offers neither evidence nor argument.  Although the Court cannot grant Rule 56 relief to STA Mobile by default, plaintiff's omission is at his peril, given the black-letter principle that "district courts cannot concoct or resurrect arguments neither made nor advanced by the parties."  *Fils v. City of Aventura*, 647 F.3d 1272, 1284 (11th Cir. 2011).

With respect to work assignments, defendant asserts that no *prima facie* case of retaliation has been made because King has shown no causal connection between his April 3, 2008 internal complaint of discrimination and the allegedly unfavorable work assignments that STA Mobile gave him.  Plaintiff's testimony is that his work assignments were retaliatory because "all I was getting was bonding wires" (King Dep., at 337), which he viewed as an undesirable task because of its menial nature and the low level of technical skill required.

---

[18]     The legal framework and substantive analysis for Title VII claims applies equally to § 1981 claims.  *See, e.g., Standard v. A.B.E.L. Services, Inc.*, 161 F.3d 1318, 1330 (11th Cir. 1998) ("Both of these statutes have the same requirements of proof and use the same analytical framework, therefore we shall explicitly address the Title VII claim with the understanding that the analysis applies to the § 1981 claim as well."); *Williams v. Waste Management, Inc.*, 2011 WL 207932, *3 n.3 (11th Cir. Jan. 25, 2011) ("In the employment context, the same substantive analysis applies to § 1981 and Title VII claims of retaliation."); *Sharpe v. Global Sec. Int'l*, 766 F. Supp.2d 1272, 1289 (S.D. Ala. 2011) ("The Complaint frames plaintiff's claims as sounding under both Title VII and § 1981; however, the same analysis governs both sets of claims.").

However, when asked whether it was true that all he was getting was bonding-wire assignments both before and after April 3, 2008, King responded, "I would say it's true before and after as well." (*Id.*) This testimony negates any causal nexus between the adverse job assignments and King's internal complaint of race discrimination, for the simple reason that King admitted that his work assignments were confined to bonding wires both before and after the April 3 protected activity. Absent evidence that King's work assignments somehow changed for the worse after the protected activity, there is and can be no causal connection (and hence no *prima facie* case of retaliation) between his internal complaint and the unfavorable job assignments.

As for retaliatory discipline, this claim apparently centers on a written Disciplinary Report dated July 10, 2008. (There could be no other basis for a retaliatory discipline claim because the record lacks evidence that STA Mobile ever imposed any other disciplinary action against King, prior to his November 2008 termination.) That Report, prepared by project manager Bob Holloway, reflected that King was given a verbal counseling because he "failed to perform FOD walk, … clean assigned area … exceeding app. hrs." (King Dep., at 230 & Exh. 18.)[19] Defendant correctly points out (with no rebuttal or response from plaintiff) that the threshold defect with King's retaliatory discipline claim is that the causal link element of a *prima facie* case is not satisfied. The law is clear, of course, that "close temporal proximity may be sufficient to show that the protected activity and the adverse action were not wholly unrelated." *McCann*, 526 F.3d at 1376. Here, however, there was a gap of more than three months between the protected activity (*i.e.*, King's internal complaint against Lewis on April 3, 2008) and the adverse action (*i.e.*, the Disciplinary Report dated July 10, 2008). That period of time, without more, is too long to constitute close temporal proximity. *See, e.g., Thomas v. Cooper Lighting, Inc.*, 506 F.3d 1361, 1364 (11th Cir. 2007) ("A three to four month disparity between the statutorily protected expression and the adverse employment action is not enough.").[20] And

_____

[19] The gist of the Disciplinary Report was that King had failed to perform a so-called "free of debris" walk-through to ensure that there was no debris in his work area that could cause a safety hazard, and that King had also failed to complete a job in a timely manner. (King Dep., at 191-95.) King's position was that the write-up was unwarranted because he had never missed a FOD walk; therefore, he refused to sign the document. (*Id.* at 191-95, 233.)

[20] *See also Higdon v. Jackson*, 393 F.3d 1211, 1221 (11th Cir. 2004) (three-month period, in and of itself, "does not allow a reasonable inference of a causal relation between the protected expression and the adverse action"); *Sharpe*, 766 F. Supp.2d at 1300 ("Case authorities (Continued)

-22-

plaintiff has identified no other evidence or argument that might establish the requisite causal connection.  Accordingly, plaintiff's § 1981 retaliation claim predicated on allegations of retaliatory discipline is properly **dismissed** for want of proof of a *prima facie* case.[21]

Finally, with respect to overtime, the fundamental evidentiary failing in King's retaliation claim is the paucity of evidence that his overtime hours were actually cut by STA Mobile.  In King's deposition, he answered, "Right," when asked, "Your hours were not reduced from 50 to 40, were they?"  (King Dep., at 169.)  He testified, "That's correct," when asked, "And just to be

------

support the proposition that, without more, a three-month period between protected activity and adverse action is insufficient to show a causal connection.").

[21]    Two points of clarification are appropriate.  First, the record in the light most favorable to plaintiff shows that King engaged in protected activity on July 10, 2008 by notifying Holloway that Lewis was continuing to harass him.  (King Decl., ¶ 5; King Dep., at 231-32.) King made this complaint while Holloway was meeting with him to give him the Disciplinary Report.  Thus, Holloway had already prepared the disciplinary form and was simply meeting with King to discuss it when King engaged in the further protected activity of notifying Holloway of his continued dissatisfaction with Lewis.  The timing was such that the decision to discipline King had already been made before his July 10 complaint.  Plaintiff neither alleges nor shows that the Disciplinary Report temporally followed the July 10 protected activity. Accordingly, the discipline could not have been in retaliation for the July 10 protected activity because it preceded such protected activity.  For that reason, had plaintiff attempted to establish close temporal proximity based on the July 10 internal complaint (and he did not), such an attempt would have failed.

Second, plaintiff's reliance on a theory of intervening retaliatory events is unavailing to establish a causal connection here.  To be sure, "courts have routinely found a causal connection even as to retaliatory acts occurring long after the protected activity, where those events are linked by a chain of intervening retaliatory acts." *Pears v. Mobile County*, 645 F. Supp.2d 1062, 1096 (S.D. Ala. 2009) (citations omitted); *see also Wideman v. Wal-Mart Stores, Inc.*, 141 F.3d 1453, 1457 (11th Cir. 1998) (causal connection requirement satisfied where "the series of adverse employment actions commenced almost immediately after management learned she had filed the charge").  Here, however, there is no evidence that STA Mobile took any retaliatory action as to King between the April 2008 denial of a promotion and the July 2008 disciplinary write-up.  The isolated, sporadic incidents to which plaintiff refers cannot reasonably be characterized as a "chain of intervening retaliatory acts."  While plaintiff tries to fill in the temporal gaps with allegations that he was denied an evaluation that was due in May 2008, that STA Mobile failed to show him a May 2008 memorandum placed in his personnel file, that Lewis continued to treat him poorly, and so on, the record does not establish any reasonable factual basis for framing any of these events as retaliatory.  (*See* doc. 45, at 8-10.)  A series of non-retaliatory events cannot create a "string of antagonistic actions" to satisfy the causal connection element, thereby bridging the chasm between temporally discrete and isolated events.

clear, you told us that in fact your overtime was not cut." (*Id.* at 333.)  Given plaintiff's admission that his overtime was never reduced, he plainly cannot proceed with a § 1981 retaliation cause of action alleging that his overtime hours were reduced in a retaliatory fashion. Such a counterfactual claim has no place in this litigation.

In short, plaintiff has not established a *prima facie* case of retaliation with respect to his § 1981 claims alleging retaliatory work assignments, discipline and overtime.  For that reason, summary judgment will be **granted** as to those portions of Count Five.

## 2.     Denial of Promotion in October 2008.

Plaintiff claims that STA Mobile's denial of his request for promotion to the position of Senior Mechanic in October 2008 was an act of retaliation for his protected activity, in violation of the anti-retaliation provisions of Title VII and § 1981.  On summary judgment, STA Mobile contends that King "failed to support a *prima facie* case of retaliation because he failed to show a 'causal connection' between his April 3rd complaint and his denial of promotion some seven months later." (Doc. 31, at 29.)  Defendant is correct that, as previously discussed, a *prima facie* case of retaliation requires a showing of a causal link between the protected activity and the adverse action.  Inexplicably, however, defendant's argument assumes (in spite of robust record evidence to the contrary) that plaintiff's sole protected activity was the April 3 internal complaint.  Such an assumption is unwarranted.

The summary judgment record plainly establishes that King complained of continuing harassment to STA Mobile's Human Resources Manager, Richard Wellington, on October 15, 2008, shortly before STA Mobile denied his promotion request.[22]  Plaintiff testified that Wellington asked him on that date if he "was still being discriminated against," that King answered affirmatively, and that Wellington was "[o]bviously" referring back to the April 2008

---

[22]     Defendant ascribes significance to the fact that King aired complaints of continued discrimination on October 15 only after Wellington initiated the inquiry.  (Doc. 45, at 7.)  That fact is of no moment.  Protected activity is no less protected under the law because an employee was prompted or prodded by management, rather than volunteering the complaint himself.  Whatever the trigger, internal complaints of race discrimination fit comfortably within the opposition clause of Title VII.  Were the law otherwise, employers could "test" their employees by asking them if they were experiencing workplace discrimination, then firing anyone who answered affirmatively to get rid of the "troublemakers," without fear of exposure to liability on a Title VII or § 1981 retaliation theory.

complaint of race discrimination.  (King Dep., at 258-59.)  For his part, Wellington reinforces the point, indicating that on October 15, 2008, he "followed up with Mr. King on his April 3, 2008 EEO Policy complaint," and that, in response, King voiced multiple complaints of events that he specifically couched as discriminatory.  (Wellington Decl. (doc. 29, Exh. C), ¶¶ 5-6.)  King's statements to Wellington on October 15, 2008 are plainly protected activity under both Title VII and § 1981.  Because defendant denied King's promotion request shortly after plaintiff engaged in that protected activity, the causal relation prong of the *prima facie* case is satisfied, and defendant's arguments to the contrary are meritless.[23]

---

[23]        In its reply brief, defendant endeavors to deflect or minimize the October 2008 protected activity by accusing plaintiff of "conjuring-up a new retaliation claim."  (Doc. 45, at 6 (emphasis omitted).)  This is not a fair characterization.  Plaintiff's Complaint does not specify that the April 2008 internal complaint was the only protected activity in which King engaged, nor does it allege that King's retaliation claims are restricted to that particular event.  Any suggestion that plaintiff is somehow amending the pleadings on summary judgment by raising "a new retaliation claim" is inaccurate.  Similarly unavailing is defendant's suggestion that the October 15 protected activity should not count because STA Mobile investigated and found that King's complaints on that date were not substantiated.  (Doc. 45, at 7.)  Protected activity is not stripped of protected status merely because the underlying complaint is deemed not to be meritorious.  *See, e.g., Dixon*, 627 F.3d at 857 ("[e]ven if an employment practice is not as a matter of fact unlawful, a plaintiff can establish a *prima facie* case of Title VII retaliation"); *Taylor v. Runyon*, 175 F.3d 861, 869 (11th Cir. 1999) ("Under Title VII, it is well established that an employee need not prove the underlying claim of discrimination in order to establish a retaliation claim.").  Certainly, defendant neither argues nor shows that King lacked a good faith, reasonable belief that he was being subjected to racially disparate treatment as described in the October 2008 complaint; therefore, that internal complaint was protected activity, regardless of whether STA Mobile ultimately deemed it to be valid or not.  Furthermore, the Court rejects defendant's attempt to recast the evidence to assert that King's October 2008 complaints to Wellington "fall far short of the protected opposition to unlawful race discrimination required to support a retaliation claim" because they did not relate to race discrimination.  (Doc. 45, at 8 (emphasis omitted).)  This is not a case in which the plaintiff made vague complaints of harassment unconnected to allegations of race discrimination.  Finally, defendant contends that there cannot possibly be a causal connection between King's protected activity of October 15, 2008 and his discharge of November 6, 2008 because "the investigation of King's falsification that ultimately resulted in his termination was already in progress" when the protected activity took place.  (Doc. 45, at 8.)  The Court cannot agree.  The relevant inquiry is whether there is a causal connection between the protected activity and the employer's decision to take adverse action.  An adverse employment decision (here, denial of promotion / discharge) is not drained of retaliatory taint merely because the underlying investigation commenced prior to the protected activity, particularly where (as here) the adverse employment decision was made shortly after (and with full knowledge of) such protected activity.  To the extent that defendant theorizes that, (Continued)

Plaintiff having established a *prima facie* case of retaliation, the burden shifts to defendant to articulate a non-retaliatory reason for denying King a promotion in October 2008. In response, defendant asserts that it halted consideration of King's promotion request (effectively denying him the promotion) when it determined that he had falsified the OJT Form, for which transgression it terminated his employment. (Doc. 31, at 31-32.) Defendant has proffered record evidence to substantiate this legitimate, non-retaliatory reason for denying King the promotion.[24] As such, the fate of defendant's Motion for Summary Judgment as to the retaliatory promotion claim hinges on whether plaintiff has made a sufficient showing of pretext to give rise to genuine issues of material fact.

Defendant's stated reason for not promoting King in October 2008 is, essentially, that its decision to fire King for falsifying documents rendered it unnecessary to process the promotion request. (Doc. 45, at 13 ("the legitimate … reason for King's termination foreclosed further consideration of King's request for promotion in October 2008") (emphasis omitted).) In framing the issues this way, defendant intertwines the pretext analysis for the promotion claim with that for the termination claim.[25] STA Mobile says that it stopped considering King's promotion request because it decided to fire him. So if defendant's stated reason for the termination decision was a pretext for unlawful retaliation, then its stated reason for the non-promotion would necessarily be pretextual, as well. The pretext inquiries on the two claims thus merge into one. Because the Court finds in § IV.C.3., *infra*, that King has made a sufficient

---

from the inception of its investigation, STA Mobile had already decided to fire King, defendant presents no evidence that such was the case.

[24]     In particular, Wellington stated that "Mr. King's request for promotion to Senior Mechanic in October 2008 was not submitted to the October 2008 Promotion Panel after his falsification of the OJT Summary Form he submitted to support the requested promotion was discovered and substantiated." (Wellington Decl., ¶ 7.) This evidence is sufficient to satisfy defendant's modest burden of production on the intermediate step of the *McDonnell Douglas* analysis.

[25]     This intertwining is brought into sharp relief by defendant's summary judgment argument that "King's request for promotion was not considered further and he subsequently was terminated because … King intentionally falsified the FAA-mandated training document he submitted to support his request for promotion to Senior Mechanic." (Doc. 31, at 31-32.)

showing of pretext to withstand summary judgment on the retaliatory discharge claim, that determination likewise compels a finding that King has made a sufficient showing of pretext on the retaliatory failure to promote cause of action. Defendant's Motion for Summary Judgment is therefore **denied**, insofar as defendant seeks summary judgment on plaintiff's Title VII and § 1981 claims of retaliatory failure to promote in October 2008, as set forth in Counts Three and Five of the Complaint.

### 3. *Termination of Employment.*

As noted, King also claims in Counts Three and Five that STA Mobile violated Title VII and § 1981 by terminating his employment in retaliation for statutorily protected activity. Defendant moves for summary judgment on these claims.

With respect to the *prima facie* case, defendant again focuses on the causal connection element, arguing that there is no evidence of a causal link "between his April 3rd complaint and the termination of his employment and [*sic*] the seven months later." (Doc. 31, at 31.) This contention is unpersuasive for two reasons. First, as already discussed, King's October 15 conversation with Wellington was itself protected activity, giving rise to the requisite close temporal proximity (and, hence, the causal connection) between the protected activity and STA Mobile's decision to fire King on November 6. Second, as to King's discharge, there is a separate, distinct piece of evidence showing a causal connection. The law is clear that "close temporal proximity is not the only means by which a plaintiff can establish a causal connection." *Pears v. Mobile County*, 645 F. Supp.2d 1062, 1095 (S.D. Ala. 2009). Indeed, the Eleventh Circuit has explained, "We construe the causal link element broadly so that a plaintiff merely has to prove that the protected activity and the negative employment action are not completely unrelated." *Goldsmith v. Bagby Elevator Co.*, 513 F.3d 1261, 1278 (11th Cir. 2008) (citation omitted). The memorandum that STA Mobile placed in King's personnel file stating the reasons for his discharge and including the prominent handwritten notation "Complaint April 3, 2008" raises a reasonable inference that the termination and the protected activity were not completely unrelated; therefore, the causal link element is satisfied, and plaintiff has established a *prima facie* case of retaliatory discharge.[26]

---

[26]    Defendant seeks to minimize the significance of this memorandum in King's personnel file. In its Motion to Strike (doc. 44), defendant argues that "[t]he memorandum (Continued)

Defendant has met its burden of production by coming forward with a legitimate, non-retaliatory reason for King's dismissal, to-wit: STA Mobile's investigative conclusion "that King had intentionally falsified his training record." (Doc. 31, at 32.) This explanation is supported by record evidence, including STA Mobile documentation indicating that King was terminated for "Falsification of company records." (Wellington Decl., at ¶¶ 9-10 & Exh. 6.) It is further reinforced by the termination memorandum in King's personnel file (the very document that defendant attempted to strike from the record), which specifies that "King's SR APG Mechanic OJT Summary Form appeared to be a copy of one that another employee (Lakeesha Cannon) had submitted form [*sic*] a previous promotion panel," and that the "Reason for Termination" was "Falsifying OJT Summary Form." (Doc. 36, Exh. 15 at AM00062.) Accordingly, the burden shifts back to King to show pretext.

To demonstrate that an employer's stated reason is pretext for unlawful retaliation, the plaintiff "must reveal such weaknesses, implausibilities, inconsistencies, incoherencies or contradictions in the employer's proffered legitimate reasons for its actions that a reasonable factfinder could find them unworthy of credence." *Vessels v. Atlanta Independent School System*, 408 F.3d 763, 771 (11th Cir. 2005) (citation omitted); *see also Rioux*, 520 F.3d at 1278 ("The plaintiff must demonstrate weaknesses or implausibilities in the employer's proffered

---

clearly is not what King argues it is" and demands that it be stricken. (Doc. 44, at 9.) To support this position, defendant submits the Declaration of Dena Rivera, a Human Resources Administrator, indicating that she prepared the termination memorandum in connection with unemployment compensation proceedings and that she does not recall how the April 3, 2008 internal complaint came up, how she learned of it, or why she wrote it down on the termination memorandum. (Doc. 44, Exh. 2, ¶¶ 3-4.) But this line of argument fails at the summary judgment stage. A reasonable factfinder could choose to disbelieve Rivera's innocuous (and facially incomplete) explanation for how the notation about the internal complaint came to be recorded on a termination memorandum placed in King's personnel file, and could conclude that the facts credibly support a more sinister inference of a retaliatory motive. The Motion to Strike is **denied** insofar as defendant seeks to exclude the termination memorandum from the summary judgment record as evidence of retaliatory intent. At trial, defendant is, of course, free to offer Rivera's explanation for that document, which the jury will be able to assess and evaluate. What the Court will not do is take the matter out of the jury's hands based on an after-the-fact, incomplete, and in some ways unsatisfying explanation offered by defendant for how a potentially damaging document appearing to link King's internal complaint of discrimination to his termination came to be created by company officials and maintained in an official personnel file.

legitimate reasons for its action sufficient for a reasonable factfinder to disbelieve the reasons."). "If the proffered reason is one that might motivate a reasonable employer, a plaintiff cannot recast the reason but must meet it head on and rebut it. … Quarreling with that reason is not sufficient." *Wilson*, 376 F.3d at 1088 (citation omitted); *see also Alvarez v. Royal Atlantic Developers, Inc.*, 610 F.3d 1253, 1265 (11th Cir. 2010) (plaintiff may satisfy burden of showing pretext "by showing that [defendant's] proffered reasons are not credible").

Of course, federal courts "do not sit as a super-personnel department that reexamines an entity's business decisions," but instead confine their inquiry "to whether the employer gave an honest explanation of its behavior." *Chapman*, 229 F.3d at 1030. Thus, the pretext analysis turns not on King's perceptions, but on whether there is reason to believe that STA Mobile "did not honestly believe [King] to have violated company policies and engaged in such misconduct, or that it fired [him] for reasons other than those stated." *Williams v. Aircraft Workers Worldwide, Inc.*, 832 F. Supp.2d 1347, 1357 (S.D. Ala. 2011); *see also Holifield v. Reno*, 115 F.3d 1555, 1565 (11th Cir. 1997) ("[t]he inquiry into pretext centers upon the employer's beliefs, and not the employee's own perceptions").

After careful consideration of the record and the parties' respective arguments, the Court finds that plaintiff has made a sufficient showing of pretext to meet his burden. Several considerations support this conclusion. As an initial matter, again, the termination memorandum in King's personnel file lists on the same page that the reason for his discharge as falsification of the OJT Form, but also states "Complaint April 3, 2008." A reasonable factfinder could find STA Mobile's partial explanation for this troubling document not to be credible and could determine that it shows King's protected activity of April 3, 2008 as being the real reason why defendant fired him. Also, the link between King's protected activity and his termination is strengthened by the fact that when King reported continuing discrimination on October 15, 2008, Wellington pivoted from that subject in the very same conversation to inquire about his OJT Form, setting the table for King's discharge. A reasonable jury could find that when an employer reacts to protected activity by immediately asking the reporting employee accusatory questions about falsifying records, an inference of retaliatory intent is created.

Furthermore, the record viewed in the light most favorable to King reveals glaring inconsistencies and contradictions in the employer's stated reason. Plaintiff's evidence is that, when Wellington asked him about the purportedly falsified OJT Form and showed him a copy of

same, King protested to Wellington, "this is not the form that I submitted."  (King Dep., at 267; *see also* King Decl., ¶ 7 ("I looked at it and told [Wellington] that was not the document I had submitted to Mr. Holloway.").)  Thus, plaintiff's evidence is that when defendant asked him about the subject document, plaintiff protested in the clearest of terms that the OJT Form about which defendant was concerned was not the document that King had submitted with his promotion packet.  Yet defendant wrote in its investigation records that "Mr. King stated that the Sr. Mechanic OJT Summary Form was his and that he filled it out. … There is no explanation from Mr. King as to why his forms are incorrect except that he 'made a mistake.'"  (Wellington Decl., at ¶ 10 & Exh. 5.)  If plaintiff's evidence is accepted as true (as it must be on summary judgment), then defendant's Board of Inquiry prepared falsified documents of its own that materially misrepresented what King told Wellington.  In this scenario, STA Mobile officials not only ignored King's legitimate explanation for the falsified OJT Form (*i.e.*, that this was not the form he had submitted to Holloway with his promotion packet), but knowingly used as a cornerstone of their investigation a false premise that King had offered no explanation at all and had expressly admitted to the OJT Form being his.  A reasonable jury faced with this contradiction could conclude that the stated reason for King's discharge (*i.e.,* that he had falsified the OJT Form) was a pretext for unlawful retaliation, inasmuch as STA Mobile distorted and manipulated King's statements during the investigation to reach a predetermined conclusion, all shortly after King voiced at least his third internal complaint of ongoing discrimination and harassment.

Yet another basis for finding pretext lies in the inconsistency / implausibility in defendant's accusations of falsification in the first place.  Recall that STA Mobile's position is that King submitted a form saying he had received on-the-job training on specific dates that he had not actually received, and that King had presented that form to STA Mobile as part of a promotion request.  To the best of the Court's knowledge, defendant has never said that King did not actually have sufficient on-the-job training to qualify for the promotion to Senior Mechanic.  King's uncontroverted testimony is that he did.  (King Dep., at 265-66.)  In other words, plaintiff's evidence (which defendant has not contested on summary judgment) is that King had the requisite OJT needed for a Senior Mechanic promotion, but that STA Mobile found he had documented it inaccurately.  The underlying fact of the sufficiency of King's OJT remains the same, either way.  What reason would King have had to intentionally falsify a document to

-30-

confirm training that he actually possessed?[27]  And what legitimate reason would STA Mobile have for firing a productive worker who had the necessary training for a promotion request, but may have documented it incorrectly?  These questions remain unanswered in the summary judgment filings, and give rise to genuine issues of material fact as to whether defendant's real reason for discharging King was his protected activity under Title VII and § 1981, rather than the potentially implausible falsification reason given (which a reasonable jury could find to be controverted by common sense and by the explanation King gave Wellington, which said jury could find STA Mobile then mischaracterized to suit the desired outcome of its investigation after King again engaged in protected activity).

For all of these reasons, defendant's Motion for Summary Judgment is **denied** with respect to the retaliatory termination claims set forth in Counts Three and Five.

### D.    *Disparate Treatment Claims.*

In Counts One, Four and Six of the Complaint, plaintiff brought claims of disparate treatment on the basis of race, in violation of Title VII and § 1981, and on the basis of age, in violation of the ADEA.  Specifically, King contends that STA Mobile denied him a promotion to the position of Senior Mechanic in October 2008 because of his race (black) and age (49 at the time of the challenged promotion decision), and that STA Mobile terminated his employment because of his race (black).[28]

---

[27]    Plaintiff's evidence also reveals literally dozens of instances of proper on-the-job training that plaintiff had received between April 2008 and October 2008 that were not listed on the OJT Form that Wellington showed King.  (King Decl., ¶ 13 & Exh. 1.)  What nefarious purpose could King have had to submit an OJT Form that omitted recitation of those numerous fully documented, proper instances of OJT?  Again, it just makes no sense, which goes to the underlying point that a reasonable factfinder could conclude that what STA Mobile accuses King of having done is so implausible and lacking in credibility that it could not have been the real reason for his dismissal, but was instead a pretext for unlawful retaliation.

[28]    Also pending are plaintiff's § 1981 claims of racial discrimination after May 30, 2008 with regard to work assignments, discipline and overtime, as set forth in Count Four.  These claims (as to which defendant moved for summary judgment, but plaintiff did not respond) may be dispatched quickly.  Plaintiff's allegations of discriminatory work assignments (with King being given disproportionately menial tasks) do not qualify as "adverse employment actions" that might support a § 1981 race discrimination claim, as a matter of law.  *See, e.g., Howard v. Walgreen Co.*, 605 F.3d 1239, 1245 (11th Cir. 2010) ("Not all employer actions that negatively impact an employee qualify as adverse employment actions. … Rather, only those employment actions that result in a serious and material change in the terms, conditions, or (Continued)

## 1.   *Failure to Promote (Race / Age Discrimination).*

To establish a *prima facie* case of discriminatory failure to promote on the basis of race or age, a plaintiff must show that: (1) he is a member of a protected group; (2) he was qualified for and applied for the promotion; (3) he was rejected despite his qualifications; and (4) "other equally or less-qualified employees outside [his] class were promoted." *Brown v. Alabama Dep't of Transp.*, 597 F.3d 1160, 1174 (11th Cir. 2010); *see also Springer*, 509 F.3d at 1347 n.2 (similar).  Defendant moves for summary judgment on plaintiff's discriminatory failure-to-promote claims for the stated reason that King has failed to produce evidence to satisfy the fourth element of the *prima facie* showing.

In response, King identifies two substantially younger white employees, Turner Spann and Jason Griffis, whom he claims were equally or less qualified than he, yet were promoted to the Senior Mechanic position.  The record reflects that STA Mobile hired Spann as an AMT student in January 2005; promoted him to APG mechanic, skill level I, in February 2007; promoted him to APG mechanic, skill level II, in June 2007; and promoted him to senior mechanic in February 2008.  (Doc. 36, Exh. 10.)  Further, the record shows that STA Mobile

---

privileges of employment will suffice.") (citations, internal quotation marks and emphasis omitted); *Davis v. Town of Lake Park, Fla.*, 245 F.3d 1232, 1245 (11th Cir. 2001) ("[i]n the vast majority of instances, … we think an employee alleging a loss of prestige on account of a change in work assignments, without any tangible harm, will be outside the protection afforded by Congress in Title VII's anti-discrimination clause"); *Belt v. Alabama Historical Commission*, 2005 WL 1653728, *10-11 (S.D. Ala. July 12, 2005) (changes to plaintiff's work assignments deemed insufficient to satisfy substantiality requirement for adverse employment action).  Furthermore, King's claims of racially discriminatory discipline fail because he has not established a *prima facie* case or made any showing of pretext.  Specifically, plaintiff has not presented adequate facts to support a reasonable inference that the July 2008 Disciplinary Report was racially motivated, that the project manager who administered the Disciplinary Report lacked an honest belief that King had engaged in the transgressions identified therein, or that the mild disciplinary measure constituted adverse employment action for purposes of a § 1981 race discrimination claim.  *See McCray v. Wal-Mart Stores, Inc.*, 2010 WL 1784247, *2 (11th Cir. May 5, 2010) ("McCray has failed to establish a *prima facie* case for discriminatory discipline because she has not shown that any of the discipline she suffered constituted an adverse employment action.").  Finally, King's claims of racially discriminatory reduction of overtime fail because he has conceded that his overtime was never reduced or otherwise adversely affected.  (*See* § IV.C.1., *supra*.)  Defendant's Motion for Summary Judgment is thus **granted** as to the portion of Count Four alleging § 1981 claims of racial discrimination after May 30, 2008 with regard to work assignments, discipline and overtime.

hired Griffis as an APG apprentice in July 2006; promoted him to APG mechanic, skill level I, in November 2006; and promoted him to senior mechanic in February 2008. (*Id.*)

The Court finds that plaintiff has made a sufficient showing that he was equally or more qualified than Spann and Griffis. With regard to Spann, the record shows that he was promoted to senior mechanic just 12 months after he became an APG mechanic, skill level I. King's October 2008 promotion request was submitted 19 months after he became an APG mechanic, skill level I, such that he had substantially more experience as an APG mechanic than Spann did at the time of their respective promotion requests. Defendant says that Spann was promoted to senior mechanic on the strength of his "exceptional performance evaluations." (Wellington Decl., ¶ 7.) But the record shows that Spann received an evaluation score of 29 (above average) in May 2007. (Wellington Decl., Exh. 3C, at 33.) King received an evaluation score of 27 (also above average) that same month. (Doc. 29, Exh. 15, at AM00029.) Likewise, with regard to Griffis, the record shows that STA Mobile promoted him to senior mechanic just 15 months after he became an APG mechanic, skill level I. Again, King's October 2008 promotion request was submitted 19 months after he became an APG mechanic, skill level I, meaning that he had more experience as an APG mechanic at the time of their respective promotion requests. STA Mobile touts Griffis's performance scores of 28 and 29 (Wellington Decl., ¶ 7), but again, King's score of 27 fell in the same "above average" range.[29] And at least one project manager and one lead had expressly recommended King for the senior mechanic promotion, which attests to his high level of performance and aptitude. Such evidence is sufficient to satisfy plaintiff's burden of establishing a *prima facie* case, which "is not onerous." *Holland v. Gee*, 677 F.3d 1047, 1055 (11th Cir. 2012) (citation omitted).[30]

---

[29]     Defendant's reference to a performance evaluation score of 34 (excellent) that Griffis received two months <u>after</u> being promoted to senior mechanic is inconsequential because it could not have influenced an earlier promotion decision.

[30]     In its principal brief, STA Mobile supports its *prima facie* case argument by citing *Brooks v. County Com'n of Jefferson County, Ala.*, 446 F.3d 1160 (11th Cir. 2006), for the proposition that a plaintiff in a failure-to-promote claim must show disparities in qualifications "of such weight and significance that no reasonable person, in the exercise of impartial judgment, could have chosen the candidate selected over the plaintiff." *Id.* at 1163 (citation omitted). But *Brooks* was addressing the pretext phase of the analysis, not the *prima facie* case phase. More importantly, *Brooks* is inapplicable because STA Mobile does not contend that King's October 2008 promotion application was denied because of a defect in his qualifications (Continued)

Under *McDonnell Douglas*, the burden then shifts to STA Mobile to articulate a legitimate nondiscriminatory reason for its failure to promote King.  As discussed previously, defendant's sole expressed reason for not promoting plaintiff in October 2008 is that defendant "concluded that King intentionally falsified the FAA-mandated training document he submitted to support his request for promotion to Senior Mechanic."  (Doc. 31, at 31-32; *see also* doc. 45, at 13.)  That statement (supported by record evidence) certainly satisfies defendant's burden of production.  However, for reasons already set forth as to the retaliatory termination claim in § IV.C.3., *supra*, plaintiff has made a sufficient showing of pretext to establish genuine issues of material fact.  Among the considerations animating this conclusion are the following: (i) King's evidence is that he told Wellington that the allegedly inaccurate OJT Form was not the one he had submitted with his promotion packet, yet STA Mobile investigators wrote that King had admitted that the form was his and that he had prepared it; (ii) plaintiff's evidence is that there was no reason for him to falsify his OJT Form because he had the requisite training; (iii) the OJT Form that defendant attributed to him lacked dozens of entries from April 2008 to October 2008 that would have documented King's training (such that it is difficult to fathom why they would have been omitted from the form); and (iv) defendant never followed up or investigated King's explanation in any meaningful way.

Considered in the aggregate, these facts (as well as the fact that STA Mobile had previously promoted similarly qualified, younger, white employees to the position of senior mechanic) give rise to sufficient implausibilities, inconsistencies and incoherencies in defendant's explanation for denying King the promotion that a reasonable factfinder could conclude that such explanation was not truthful and that the real reason for the failure to promote was unlawful age and race discrimination.  For these reasons, defendant's Motion for Summary Judgment is **denied** insofar as it is aimed at the portions of Counts One, Four and Six alleging discriminatory failure to promote in October 2008 on the basis of race and age.

---

or because he was less qualified than Spann and Griffis.  The pretext analysis must be derived from the legitimate nondiscriminatory reason actually offered by defendant, not some other reason that it has not articulated.

### 2.    *Termination of Employment (Race Discrimination).*

The final claims asserted in the Complaint are for racially discriminatory discharge, in violation of Title VII and § 1981.  Defendant moves for summary judgment on these causes of action on the ground that King cannot establish a *prima facie* case of race discrimination because he cannot show that STA Mobile treated any similarly situated employee outside of his protected class more favorably.  (Doc. 31, at 30.)

In response, plaintiff eschews the traditional *McDonnell Douglas* methodology for making a *prima facie* showing of race discrimination.  Instead, King casts his lot exclusively with an alternative method of proof.  (Doc. 37, at 27.)  A recent (and somewhat controversial)[31] line of Eleventh Circuit cases on which King relies opines that "establishing the elements of the *McDonnell Douglas* framework is not, and never was intended to be, the *sine qua non* for a plaintiff to survive a summary judgment motion in an employment discrimination case," such that "the plaintiff's failure to produce a comparator does not necessarily doom the plaintiff's case."  *Smith v. Lockheed-Martin Corp.*, 644 F.3d 1321, 1328 (11th Cir. 2011); *see also Sims v. MVM, Inc.*, 704 F.3d 1327, 1333 (11th Cir. 2013) ("Although our *Kragor* decision and our holding today reaffirm the use of the *McDonnell Douglas* framework …, this framework is not the *sine qua non* for a plaintiff to survive summary judgment in a discrimination case.").  These authorities explain that "the plaintiff will always survive summary judgment if he presents circumstantial evidence that creates a triable issue concerning the employer's discriminatory intent."  *Smith*, 644 F.3d at 1328; *see also Chapter 7 Trustee v. Gate Gourmet, Inc.*, 683 F.3d 1249, 1255 (11th Cir. 2012) (same).  To create a triable issue of fact, the plaintiff must come forward with "a convincing mosaic of circumstantial evidence that would allow a jury to infer intentional discrimination by the decisionmaker."  *Smith*, 644 F.3d at 1328 (footnote and citation omitted); *see also Gate Gourmet*, 683 F.3d at 1256 ("Whatever form it takes, if the

---

[31]       *See Bell v. Crowne Management, LLC*, 844 F. Supp.2d 1222, 1232 (S.D. Ala. 2012) ("To the extent that *Smith* suggests the burden-shifting paradigm of *McDonnell Douglas* can be ignored in a case based on circumstantial evidence, freeing the plaintiff from any obligation to establish a *prima facie* case, it is in tension with a long line of Eleventh Circuit precedent. … It is to that extent also in tension with *McDonnell Douglas* itself") (footnote omitted); *Williams v. Cleaver-Brooks, Inc.*, 2012 WL 6151141, *7 n.9 (M.D. Ga. Dec. 11, 2012) ("[t]he Court notes with interest" the above-quoted passage from *Bell*).

circumstantial evidence is sufficient to raise a reasonable inference that the employer discriminated against the plaintiff, summary judgment is improper.") (citations omitted).

Given plaintiff's reliance on the *Smith* line of authorities rather than a conventional *McDonnell Douglas* analysis, the critical question is whether he has pointed to sufficient circumstantial evidence to raise a reasonable inference that STA Mobile fired King because he is black. Unfortunately, plaintiff's brief does not delineate which evidence he is referencing when he writes that "there is enough non-comparison circumstantial evidence to raise a reasonable inference of intentional discrimination." (Doc. 37, at 27 (citation and internal quotation marks omitted).) The Court does not bear the burden of discerning this evidence for him, and federal courts do not "guess" at what a litigant might mean. Still, the undersigned will not adopt defendant's argument that King simply "presumes he has supported a *prima facie* case." (Doc. 45, at 3 (emphasis omitted).) Review of the paragraphs of plaintiff's brief immediately preceding his statement about there being "enough non-comparison circumstantial evidence" suggests that, in positing the sufficiency of non-comparator evidence of race discrimination, King is relying on the following allegations: (i) "the negative racial component to the atmosphere in the plant;" (ii) "the history that Plaintiff was enduring with Lewis;" and (iii) "the questionable history of Holloway and Wellington in the workplace in this area." (Doc. 37, at 26-27.)

With regard to the "negative racial component" cited by plaintiff, he does not say what he means. Nonetheless, the record shows that, in his 25 months of employment at STA Mobile, King was exposed to several instances of what he perceived to be racially offensive conduct. First, King heard or was told that his lead, Jeremy Lewis, made two isolated racially offensive statements (one professing delight at unfair treatment of "black guys," and the other referencing a black employee as "monkey boy"). Second, King saw what he believed to be nooses in STA Mobile hangars on two occasions. Third, King saw project manager Holloway wearing a motorcycle jacket sporting a Confederate flag while inside defendant's facility on an ongoing basis. Fourth, King occasionally saw Confederate flag decals on employee toolboxes. And fifth, he observed racially offensive graffiti on the bathroom walls. But none of this circumstantial evidence raises a reasonable inference that STA Mobile fired King because he is black.[32]

---

[32]     This is particularly so, when one considers undisputed countervailing evidence that King never heard any other racial slurs or racially offensive comments uttered by anyone at
(Continued)

As for the "history that Plaintiff was enduring with Lewis," that might perhaps be circumstantial evidence of racially discriminatory discharge if there was any indication that Lewis was involved in STA Mobile's investigation of alleged falsification of records or its decision to terminate King's employment.  Undisputed evidence confirms that he was not. (Wellington Decl., ¶ 9; Hefner Decl. (doc. 29, Exh. E), ¶ 5.)[33]  That a lead employee unconnected to the adverse personnel decision might have harbored discriminatory animus in no way supports a reasonable inference that such discriminatory animus was transferred to, or otherwise held by, the decisionmaker.

As for "the questionable history of Holloway and Wellington," plaintiff once again fails to elaborate or expound on this vague assertion, leaving the Court guessing as to what he might mean.[34]  Elsewhere in his brief, King alludes to certain events of race discrimination at STA Mobile in 2003 and 2004 (long before King began working there), as to which Wellington and Holloway "were also responsible managers."  (Doc. 37, at 8 n.9.)  Even if the facts pertaining to those events could be presented by King in an admissible form (which he has not done on summary judgment and which the Court is not convinced he would be able to do at trial), it is undisputed that those alleged events occurred four or more years before the challenged personnel decision in this case.  A reasonable jury could not conclude that the allegedly "questionable" acts

---

defendant's premises, that STA Mobile removed the nooses promptly when brought to their attention, that defendant instructed Holloway not to wear that jacket inside the facility, that the decals were observed sporadically at best, and that defendant took aggressive ongoing measures to combat racist graffiti.

[33]    Plaintiff accuses defendant of wanting to "have its cake and eat it, too" because defendant admits that Lewis was involved in preparing a performance evaluation for King in May 2007.  (Doc. 37, at 27 n.18.)  The mere fact that Lewis prepared an evaluation for plaintiff some 18 months before STA Mobile fired plaintiff does not give rise to even the faintest inference that Lewis's purported racial animus infected the termination decision.  Such a vast logical leap is not supported by the record, and cannot be endorsed merely because plaintiff wishes it were so.

[34]    In impugning Holloway, plaintiff also cuts against his own sworn testimony.  In his deposition, King admitted that Holloway had always treated him fairly "to [his] face," and had recommended him for promotion on multiple occasions.  (King Dep., at 235-36.)

and omissions of Wellington and Holloway in 2003 and 2004 support an inference that they fired King in November 2008 because he is black.[35]

Applicable case law teaches that, when a plaintiff endeavors to overcome summary judgment by presenting circumstantial evidence outside the usual *McDonnell Douglas* parameters, the proffered evidence must be weighed in the aggregate, not simply in its constituent parts. *See* Smith, 644 F.3d at 1328 (plaintiff's burden is to produce "a convincing mosaic of circumstantial evidence that would allow a jury to infer intentional discrimination") (footnote and citation omitted). Upon considering plaintiff's above-referenced "non-comparison circumstantial evidence" collectively, however, the Court's conclusion is unchanged. This evidence simply does not raise a reasonable inference of intentional discrimination. As such, plaintiff has not satisfied his burden of presenting sufficient circumstantial evidence to raise a reasonable inference that STA Mobile intentionally discriminated against King on the basis of his race when it terminated his employment. Defendant's Motion for Summary Judgment will be **granted** as to plaintiff's § 1981 and Title VII discriminatory discharge claims.

## V.   Conclusion.

For all of the foregoing reasons, it is **ordered** as follows:

1.      Plaintiff's Motion to Strike (doc. 38) is **moot** because the exhibits to which objection was made were not necessary to, and were not considered in, the summary judgment analysis;

---

[35]      This determination is reinforced by the insubstantiality of these "ancient history" events upon which King attempts to construct an inference of racial bias. The exhibit offered by plaintiff includes the following references to Wellington and Holloway: (i) Wellington counseled an employee in 2003 upon learning that the employee had used the word "niggers" (doc. 36, Exh. 2 at 9); (ii) racial graffiti was observed in a restroom outside Wellington's office in 2004 (*id.* at 10); (iii) when an employee complained about another employee's use of the term "nigger" in November 2003, Wellington characterized the incident as "just a case of slip of the tongue," but the offending employee was suspended for two weeks without pay (*id.* at 13); (iv) Holloway had a Confederate flag bumper sticker on his car in January 2005 (*id.* at 14); (v) Wellington had seen Confederate flags on toolboxes (*id.*); and (vi) Wellington took no action against a supervisor for displaying a rebel flag tattoo (*id.* at 23). These weak allegations, coupled with the vast temporal gap separating them from the facts at issue in this litigation, are far too attenuated to support a reasonable inference that Wellington and Holloway were the architects of (or otherwise complicit in) a scheme to fire King on the basis of his race.

2.     Defendant's Motion to Strike (doc. 44) is **denied** to the extent that is a disguised, unauthorized, supplemental summary judgment brief arguing about the merits, rather than evidentiary issues (*i.e.*, the inferences to be drawn from exhibits rather than whether such exhibits should be stricken as improper).  Defendant's Motion to Strike is further **denied** insofar as it (a) seeks to have Paragraphs 7, 13 and 15 of plaintiff's declaration stricken under the "sham affidavit" rule; and (b) seeks to have plaintiff's termination memorandum (culled from defendant's own personnel files produced in discovery in this litigation) stricken as unauthenticated or as not yielding credible circumstantial evidence of retaliatory intent.  The Motion to Strike is **moot** in all other respects;

3.     Defendant's Motion for Summary Judgment (doc. 29) is **granted in part**, and **denied in part**.  The Motion for Summary Judgment is **denied** as to the following claims, which will proceed to trial: (i) plaintiff's claims of retaliatory denial of promotion in October 2008, brought under Title VII and 42 U.S.C. § 1981 and asserted in Counts Three and Five; (ii) plaintiff's claims of retaliatory discharge, brought under Title VII and § 1981 and asserted in Counts Three and Five; and (iii) plaintiff's claims of discriminatory failure to promote in October 2008 on the basis of race and age, brought under Title VII, § 1981 and the ADEA, and asserted in Counts One, Four and Six.  As to all other claims and causes of action asserted in the Complaint, the Motion for Summary Judgment is **granted** and those claims are **dismissed with prejudice**; and

4.     This action remains set for Final Pretrial Conference on July 23, 2013 at 1:30 p.m., with jury trial to follow in the August 2013 civil term.

DONE and ORDERED this 11th day of June, 2013.

s/ WILLIAM H. STEELE
CHIEF UNITED STATES DISTRICT JUDGE
